Cameron Hall; AZ Bar No. 025177
Michael Zoldan; AZ Bar No. 028128
**HALL & CHELLE LAW, LLC**
7077 E. Marilyn Rd. # 140
Scottsdale, AZ 85254
Tel: 480.422.4529
Fax: 602.513.7449
Cameron@Hall-Chelle.com
Michael@Hall-Chelle.com
Docketing@Hall-Chelle.com

Attorney for Plaintiff
Lydia Evanson

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| **Lydia Evanson**, an Arizona resident,<br><br>Plaintiff,<br><br>v.<br><br>**Veolia Transportation Services, Inc.,** a Maryland corporation,<br><br>Defendants. | Case No. _____<br><br>**VERIFIED COMPLAINT**<br><br><br>**(Jury Trial Demanded)** |

Plaintiff Lydia Evanson, ("**Evanson**") for her complaint against Defendant Veolia Transportation Services, Inc. ("**Veolia**"), hereby alleges and asserts as follows:

## PARTIES TO THE COMPLAINT

1.     Plaintiff Lydia Evanson (**"Evanson"**) is, and at all times relevant hereto was, a resident of Maricopa County, Arizona.

2.     Defendant Veolia Transportation Services, Inc. ("**Veolia**" or the "**Company**") is a Maryland Corporation registered to do business in the State of Arizona, and currently doing business in Maricopa County, Arizona.

<u>JURISDICTION AND VENUE</u>

3.     The discriminatory, unlawful and retaliatory employment practices alleged herein were committed within and/or had their primary effect within the jurisdiction and venue of this Court.

4.     This action is brought pursuant to, *inter alia*, Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. §2000e et seq.), and the jurisdiction of this Court is invoked to secure protection and redress for the deprivation of rights guaranteed by federal and state law, which rights provide for injunctive and other relief for illegal discrimination in employment.  This court has jurisdiction of the claims herein pursuant to 42 U.S.C.A. § 2000e-5(f)(3), 28 U.S.C.A. §§ 1331 and 1343(4), and 42 U.S.C. § 2000d-4a.

5.     Plaintiff alleges that the Defendant has engaged in acts or omissions within and without Maricopa County, Arizona, as set forth more specifically infra, causing harm and damages to Plaintiff in an amount exceeding seventy-five-thousand dollars ($75,000.00).  This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

6.     Venue herein is proper under 28 U.S.C.A. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3) as the unlawful employment practice of which Plaintiff is complaining was committed in Maricopa County in the State of Arizona

HALL & CHELLE, LLC

7077 E. Marilyn Rd., Suite 140, Scottsdale, AZ 85254
Tel: 480.422.4529 – Docketing@Hall-Chelle.com

7.     At all times mentioned in this Complaint, Defendant Veolia regularly employed fifteen or more persons, bringing Defendant employer within the provisions of Title VII of the Civil Rights Act of 1963, 42 U.S.C. § 2000e et seq., as amended ("**Title VII**") and A.R.S. § 41-1461 et seq. (the "**Arizona Civil Rights Act**" or "**ACRA**").

8.     Upon information and belief, Defendant Veolia has its principal place of business in the State of Illinois, within the County of DuPage.

9.     All conditions precedent to jurisdiction have been complied with, to wit: timely charges of employment discrimination were filed with the Equal Employment Opportunity Commission and a Right to Sue letter was received; and, this Complaint has been filed after receipt of the Right to Sue letter.

10.    Jurisdiction in this Court is proper.

11.    Venue in this Court is proper.

## GENERAL ALLEGATIONS COMMON TO ALL CLAIMS

12.    On July 14, 2011, the Equal Employment Opportunity Commission ("**EEOC**") issued a reasonable cause determination, finding that Veolia "discriminated against Charging Party because of her sex, female, in her compensation and benefits and terminated her in retaliated for engaging in protected activity in violation of Title VII."

13.    Defendant's employment practices, as alleged herein, are unlawful, and constitute a violation of additional provisions of Title VII and the EPA.

14.    The effect of the practices complained of herein has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect her status as an employee because of her gender and/or her protected activity.

HALL & CHELLE, LLC

7077 E. Marilyn Rd., Suite 140, Scottsdale, AZ 85254
Tel: 480.422.4529 – Docketing@Hall-Chelle.com

15.     Defendant's unlawful employment practices complained of herein were, and are, intentional.

16.     Defendant's unlawful employment practices complained of herein were done with malice, or with reckless indifference to Plaintiff's federally protected rights.

17.     Plaintiff filed timely charges of employment discrimination with the Equal Employment Opportunity Commission ("**EEOC**").

18.     In June of 2007, Plaintiff was hired by Defendant as the Regional Director of Human Resources.

19.     Initially, she thoroughly enjoyed working for Defendant and was amenable to take on additional assignments.

20.     In fact, James Wolf ("**Wolf**"), the Regional Vice President, often assigned her responsibilities of an Area Vice President ("**AVP**") because of her demonstrated abilities.

21.     As a H.R. Director, part of Plaintiff's job duties included working with EEOC charges that have been filed against the Company.

22.     When she first started, Plaintiff was surprised with the high number of EEOC charges that were filed against the Company.

23.     Over the first year and a half with the Company, Plaintiff noticed that males were often treated differently, and better, than females.

24.     Plaintiff noticed female employees were subjected to various forms of discrimination and harassment.

25.     For example, Evanson reported the following incidents of discrimination and/or harassment to her superiors:

HALL & CHELLE, LLC

7077 E. Marilyn Rd., Suite 140, Scottsdale, AZ 85254
Tel: 480.422.4529 – Docketing@Hall-Chelle.com

HALL & CHELLE, LLC

7077 E. Marilyn Rd., Suite 140, Scottsdale, AZ 85254
Tel: 480.422.4529 – Docketing@Hall-Chelle.com

A.   Employee Gregory Cook used Company funds to purchase expensive rims on his company vehicle.   Cook denied using company funds for personal gain—however, the body shop invoice submitted to the company suggests otherwise.   Despite Plaintiff's recommendation to the Company that Cook be terminated, he was not.   Instead, when Defendant's Chief Operating Officer, Michael Griffus, received word that Plaintiff recommended the termination of his friend, Cook, Griffus told Wolf that he needed to "get his girl under control."   Just months after the investigation, Cook later received a performance based bonus and was promoted by the Company.

B.   Employee Ms. Elin Fehr, a H.R. Manager made an honest mistake—which she openly and immediately admitted—in an EEOC investigation, costing the Company money.   The Company initially denied her performance based bonus, but eventually paid it only after Plaintiff convinced Ms. Fehr to withdraw her charge of discrimination with the EEOC.

C.   In April 2009, The Company issued a policy concerning company cars.   The policy allowed certain positions to receive a company vehicle, including any employee who put 12,000 or more miles on their personal vehicle for company business.   As soon as the policy was implemented, the Company made at least three exceptions to the policy for males.   Plaintiff, who drove close (but less) than

HALL & CHELLE, LLC

7077 E. Marilyn Rd., Suite 140, Scottsdale, AZ 85254
Tel: 480.422.4529 – Docketing@Hall-Chelle.com

12,000 miles on her personal vehicle requested an exception be made for her also.   Her request was promptly denied by the Company.   When she inquired about not being afforded the same privileges as the male employees, Chief Executive Officer Mark Joseph ("**Joseph**"), said he would not issue a company car to an "H.R. girl."

26.    In January 2009, due to the pervasive and ongoing nature of Defendant's illegal conduct, Plaintiff submitted her monthly report to the Senior Vice President of Human Resources, Ms. Anita Skotnicki ("Skotnicki"), which identified the Company's inconsistency in administering its policies between males and females.  (Attached hereto as "Exhibit 1").

27.    Plaintiff also reported the discrimination to Wolf.

28.    Defendant failed to take any corrective measures in response to Evanson's report.

29.    Despite her concerns regarding the Company's treatment of herself, and other similarly situated women, Plaintiff continued to perform for Defendant at the highest levels.

30.    Indeed, Evanson regularly worked 18 hour days, including on Saturdays and Sundays.

31.    In addition to performing her regular job duties as Regional H.R. Director, Evanson was also assigned many job duties of an AVP.

32.    Throughout most of 2009, as Plaintiff's workload became increasingly inflated with an AVP's responsibilities, she requested that Wolf either hire her

additional help, or else promote her to the position of AVP, and then hire a replacement to fill her role as Regional H.R. Director.

33.     Plaintiff and Wolf discussed her proposition; however, Wolf was confident that Joseph would not agree to hire a female as AVP.

34.     Wolf even stated to Plaintiff that, based upon his knowledge of Defendant's conduct, attitudes and beliefs, the Company's upper management was sexist.

35.     Plaintiff was never promoted to the position of AVP.

36.     She was never given additional help to manage her increased work load.

37.     In November 2009, Plaintiff was scheduled to spend the Thanksgiving holiday with her family in Pennsylvania.

38.     However, two days prior to Thanksgiving, Plaintiff was informed by Defendant that its property in Mesa, Arizona, was being audited.

39.     In order to properly respond to the audit, Plaintiff cancelled her vacation and worked through the holiday to ensure that Defendant was in compliance with the requisite immigration and customs regulations.

40.     Unlike males who made similar (or lesser) contributions, Plaintiff received no additional compensation, bonus or benefit for such dedication and sacrifice.

41.     Defendant has a pattern and practice of increasing employees' pay at the end of each fiscal year in order to keep pace with inflation and competition.

42.     Defendant also has a pattern and practice of providing performance based bonuses at the end of each fiscal year.

43.     In 2009, Plaintiff received an excellent review from Wolf.

HALL & CHELLE, LLC
7077 E. Marilyn Rd., Suite 140, Scottsdale, AZ 85254
Tel: 480.422.4529 – Docketing@Hall-Chelle.com

44.     Despite that review, and her demonstrable record of excellence, Joseph cut Plaintiff's salary increase from 4% to 2%.

45.     That reduction was a de facto pay cut.

46.     Plaintiff was informed that Joseph's position on her salary cut was nonnegotiable.

47.     Nevertheless, Wolf called Joseph and provided further evidence that Plaintiff is an excellent worker who frequently goes above and beyond her job duties.

48.     Wolf requested that Joseph reconsider his decision to cut Plaintiff's salary increase.

49.     Joseph reluctantly acquiesced, and reinstated Plaintiff's salary.

50.     That same year, Plaintiff was eligible for a performance based bonus.

51.     Defendant regularly offers bonuses to both Plaintiff's peers, and her superiors.

52.     In 2009, despite having an excellent performance review, and an established record of working long hours, weekends and even holidays, Joseph cut Plaintiff's performance based bonus in half.

53.     Plaintiff was later informed by her superior that Joseph cut her performance based bonus because of his false belief that Plaintiff and Wolf were having sexual relations.

54.     On March 22, 2010, in front of Skotnicki and Defendant's In-House counsel, Alan Moldawer ("Moldawer"), Joseph said that there was no way Plaintiff deserved a four percent increase in her salary.

HALL & CHELLE, LLC
7077 E. Marilyn Rd., Suite 140, Scottsdale, AZ 85254
Tel: 480.422.4529 – Docketing@Hall-Chelle.com

55.     He alleged that the only reason Wolf wanted Plaintiff to receive the increase was because of their alleged intimate relationship.

56.     Despite its belief that Wolf was having a sexual relationship with his subordinate, Defendant took no such actions against him.

57.     Defendant afforded Wolf such favorable treatment because of his gender.

58.     When Plaintiff was informed of the foregoing, Plaintiff was devastated – particularly in light of all of the sacrifices she made for the Company.

59.     This was not the first time a manger for the Company had been accused of having an intimate relationship with a co-worker.

60.     Manager Erik Zandhuis, a male, was disciplined by the company for having an affair with a subordinate.

61.     Nevertheless, Zandhuis received his full increase and performance based bonus in the same year that he was disciplined for such conduct.

62.     Cook (as described supra) received his full increase and performance based bonus the year he stole from the Company to enhance the appearance of his vehicle.

63.     As a result of Defendant's conduct, Plaintiff decided to file a Charge of Discrimination with the EEOC.

64.     Prior to doing so, however, she informed Skotnicki of her intentions.

65.     Skotnicki requested that Plaintiff meet with Joseph and Moldawer before filing her charge, which she did.

66.     On March 23, 2010, Plaintiff met with Moldawer and Skotnicki in Defendant's headquarters located in Chicago, Illinois.

HALL & CHELLE, LLC
7077 E. Marilyn Rd., Suite 140, Scottsdale, AZ 85254
Tel. 480.422.4529 – Docketing@Hall-Chelle.com

HALL & CHELLE, LLC

7077 E. Marilyn Rd., Suite 140, Scottsdale, AZ 85254
Tel: 480.422.4529 – Docketing@Hall-Chelle.com

67.     Much to her surprise, rather than investigating the incidents reported by Plaintiff, or gathering additional facts, Moldawer and Skotnicki spent the entire meeting berating and verbally attacking Plaintiff.

68.     In fact, during that entire meeting, Defendant never once addressed its treatment of female employees.

69.     Instead, Moldawer informed for an incident that allegedly occurred two months prior.

70.     Skotnicki and Moldawer interrogated Plaintiff regarding her expense reports.  They accused her of falsifying her expense reports for a meeting with two other employees of the Company.

71.     As a result of such accusations, Plaintiff was informed that she was being placed on administrative leave.

72.     Defendant's conduct was clearly in retaliation for Plaintiff's decision to file a Charge with the EEOC.

73.     In fact, Defendant was so desperate to terminate Plaintiff that it based its decision on an accusation that Plaintiff was able to unequivocally disprove – in a matter of minutes – by producing the receipts in question.

74.     Moreover, Defendant's allegations related to conduct that occurred two months earlier.

75.     Skotnicki and Moldawer then accused Plaintiff of improperly using Company funds to purchase a plane ticket for personal travel.

76.     Plaintiff reminded them that in 2009, when she was scheduled to go on vacation for the Thanksgiving holiday, she had to cancel a ticket, purchased with her

own money, in order to stay and work on the Company's audit during the Thanksgiving holiday.

77.    As a result, Plaintiff was authorized to, and did, purchase a plane ticket for personal travel using company funds.

78.    In fact, Defendant's own expense records contained a note describing exactly what had occurred, and why Plaintiff was using Company funds for personal travel.

79.    In light of such irrefutable evidence, Defendant had to retract yet another spurious allegation against Plaintiff.

80.    Defendant then accused Plaintiff of engaging in improper conduct back on January 21, 2010.

81.    On that day, numerous flights into and out of the Phoenix International Airport, including Plaintiff's, were delayed due to inclement weather.

82.    Plaintiff spent much of her five hour delay speaking with two elderly business men who were also stranded at the airport.

83.    After spending all day at the airport, their flights were finally cancelled, so they began scrambling to find a place to spend the evening.

84.    Wolf had given Plaintiff authorization to use the Company's corporate apartment, which is located right next to the airport.

85.    As she was departing for the apartment, Plaintiff learned that the two stranded men had no place to go for the evening.

86.    Non-employees have stayed at Veolia's corporate apartments on a number of occasions in the past.

HALL & CHELLE, LLC

7077 E. Marilyn Rd., Suite 140, Scottsdale, AZ 85254
Tel. 480.422.4529 – Docketing@Hall-Chelle.com

87.     Defendant has knowledge of such non-employees' use of their corporate apartments.

88.     Plaintiff also has knowledge of such non-employees' use of Defendant's corporate apartments.

89.     As a result, Plaintiff allowed the two stranded travelers to ride with her to the apartment, use the telephone to find a hotel with vacancies, and then leave approximately 30 minutes after arriving.

90.     Despite such facts, Moldawer and Skotnicki continued asserting that Plaintiff's conduct was improper.

91.     Plaintiff was extremely distraught that she was being interrogated such a short time after informing Defendant of her decision to file a Charge with the EEOC.

92.     On April 8, 2010, just two weeks after her meeting with Moldawer and Skotnicki, Plaintiff was terminated – allegedly for the events that transpired months earlier on January 21, 2010 at the corporate apartment.

93.     Plaintiff has exhausted all administrative remedies available to her (if any).

94.     She filed a charge of discrimination with the Equal Employment Opportunity Commission on June 14, 2010.

95.     The Commission issued Plaintiff a right to sue letter dated August 22, 2011.

COUNT I
VIOLATION OF TITLE VII
**(Discrimination, Harassment, Disparate Treatment & Retaliation)**

HALL & CHELLE, LLC
7077 E. Marilyn Rd., Suite 140, Scottsdale, AZ 85254
Tel: 480.422.4529 – Docketing@Hall-Chelle.com

96.    Plaintiff reasserts and realleges each and every paragraph in this Verified Complaint as if fully restated herein.

97.    Defendant discriminated against Plaintiff in violation of Title VII.

98.    Plaintiff has been discriminated against on the basis of her gender, which is female.

99.    Plaintiff was qualified for her job and satisfied all normal requirements thereof.

100.    In fact, Plaintiff exceeded her job performance requirements while employed by Defendant.

101.    Plaintiff was subjected to an adverse employment action by Defendant as alleged herein, including, without limitation, by having her salary and bonus cut, and being terminated by Defendant.

102.    Similarly situated males were treated more favorably than Plaintiff.

103.    Defendant committed the acts described in this Complaint oppressively, maliciously, and with an evil motive, entitling Plaintiff to an award of punitive damages in an amount appropriate to punish and make an example of Defendant.

104.    Plaintiff is entitled to recover damages against Defendant for all the harm caused by the unlawful practices and discrimination, including award of back pay, front pay, liquidated damages, interest, reasonable attorney's fees and the costs of this action, together with such other and further relief as may be just and equitable under the law.

105.    Defendant furthermore discriminated against Plaintiff by, inter alia, treating her differently from, and less favorably than, similarly situated males and by subjecting her to a discriminatory pay.

HALL & CHELLE, LLC
7077 E. Marilyn Rd., Suite 140, Scottsdale, AZ 85254
Tel: 480.422.4529 – Docketing@Hall-Chelle.com

106.   Defendant discriminated against Plaintiff by, inter alia, refusing to offer and/or provide her salary increases, bonuses and other benefits that were offered and/or provided to similarly situated male employees on the basis of her gender.

107.   Plaintiff performed duties requiring the same skill, effort, and responsibility as the duties of the male employees.

108.   The Defendant's policies, practices and/or procedures have produced a disparate impact on the Plaintiff with respect to the terms and conditions of her employment.

109.   The Defendant's conduct has been intentional, deliberate, willful, malicious, reckless and in callous disregard of the rights of the Plaintiff.

110.   Because of the continuous and persistent nature of Defendant's conduct throughout the employment of the Plaintiff, the continuing violation doctrine applies.

111.   As a result of Defendant's conduct, as alleged herein, Plaintiff has suffered and continues to suffer harm, including but not limited to lost earnings, lost benefits, and other financial loss.

112.   Complaint as if fully restated herein.

113.   Plaintiff was engaged in an activity protected under federal and state law by, inter alia, going to the EEOC to file a charge to report Defendant's illegal conduct.

114.   As a result, and as detailed herein, Defendant subjected Plaintiff to an adverse employment action.

115.   Plaintiff has been subjected to an adverse employment action because of her participation in protected activity, and/or the protected activity was a motivating factor in the employment action.

116. A reasonable employee would have found the Defendant's action materially adverse, in that it might have dissuaded a reasonable worker from participating in the protected activity.

117. As a direct and proximate result of Defendant's actions, Plaintiff suffered injury and monetary damages, including but not limited to past and future loss of income, benefits, expenses, and costs – and is entitled to all available legal and equitable remedies, including recovery of attorneys' fees and costs, the precise amount of which will be proven at trial.

118. By reason of Defendant's malfeasance, Plaintiff is entitled to all legal and equitable remedies available for violations of Title VII, including an award of punitive damages.

119. Attorneys' fees should be awarded under 42 U.S.C. § 2000e-5(k).

COUNT II
VIOLATION OF THE EQUAL PAY ACT

120. Plaintiff reasserts and realleges each and every paragraph in this Verified Complaint as if fully restated herein.

121. Defendant is an "employer" within the meaning of the Equal Pay Act, and has discriminated against Plaintiff by failing to provide salary increases and performance based bonuses when it has offered them to similarly situated male employees.

122. Plaintiff's gender was the sole and/or motivating factor in Defendant's discriminatory denial of equal pay.

HALL & CHELLE, LLC

7077 E. Marilyn Rd., Suite 140, Scottsdale, AZ 85254
Tel: 480.422.4529 – Docketing@Hall-Chelle.com

123.    Plaintiff and all other female similarly situated employees performed duties requiring the same skill, effort, and responsibility as the duties of the male employees.

124.    Defendant's disparate method of offering pay increases and bonuses between male and female employees was not due to experience, qualification, seniority, merit, quantity or quality of work, but due to gender.

125.    Defendant caused, attempted to cause, and are contributing to the continuation of pay discrimination based on gender, in violation of the EPA.

126.    Defendant knew or should have known, or showed reckless disregard for, continuation of pay discrimination based on gender, in violation of EPA.

127.    As a direct and proximate result of Defendant's actions, Plaintiff suffered injury and monetary damages, including but not limited to past and future loss of income, benefits, expenses, and costs – and is entitled to all available legal and equitable remedies, including recovery of attorneys' fees and costs, the precise amount of which will be proven at trial.

128.    Complaint as if fully restated herein.

129.    Plaintiff was engaged in an activity protected under federal and state law by, inter alia, going to the EEOC to file a charge to report Defendant's illegal conduct.

130.    As a result, and as detailed herein, Defendant subjected Plaintiff to an adverse employment action.

131.    Plaintiff has been subjected to an adverse employment action because of her participation in protected activity, and/or the protected activity was a motivating factor in the employment action.

132.   A reasonable employee would have found the Defendant's action materially adverse, in that it might have dissuaded a reasonable worker from participating in the protected activity.

133.   As a direct and proximate result of Defendant's actions, Plaintiff suffered injury and monetary damages, including but not limited to past and future loss of income, benefits, expenses, and costs – and is entitled to all available legal and equitable remedies, including recovery of attorneys' fees and costs, the precise amount of which will be proven at trial.

COUNT III
VIOLATION OF A.R.S. § 23-1501

134.   Plaintiff reasserts and realleges each and every paragraph in this Verified Complaint as if fully restated herein.

135.   Plaintiff and Defendant had an employment relationship.

136.   Defendant terminated that relationship.

137.   The termination was in retaliation to Plaintiff's complaints about gender discrimination and disparate treatment of Defendant's employees.

138.   Defendant's proffered reason to terminate Plaintiff is pretextual.

139.   Plaintiff's disclosure of Defendant's improper and disparate treatment of its employees was reasonable.

140.   Plaintiff's disclosure was of information or a reasonable belief that Defendant has and is violating Arizona law.

141.   Plaintiff's report was made to a representative of Defendant who Plaintiff reasonably believed was in a managerial or supervisory position and had the authority to investigate the information provided by Plaintiff and could reasonably take action.

HALL & CHELLE, LLC
7077 E. Marilyn Rd., Suite 140, Scottsdale, AZ 85254
Tel: 480.422.4529 – Docketing@Hall-Chelle.com

142.    Plaintiff has been materially harmed by such retaliation and wrongful termination from employment in an amount to be determined at trial.

## COUNT IV
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

143.    Plaintiff reasserts and realleges each and every paragraph in this Verified Complaint as if fully restated herein.

144.    Defendant's actions and/or omissions, as more particularly alleged supra, jointly and severally constitute extreme and outrageous conduct.

145.    Defendant knew, or reasonably should have known, that the incidents, conduct, acts, and failures to act described herein supra, would and did proximately result in emotional distress to Plaintiff, including but not limited to, loss of sleep, anxiety, and tension.

146.    As a direct and proximate result of Defendant's actions, Plaintiff has suffered and will continue to suffer pain and suffering, and extreme and severe mental anguish and emotional distress.

147.    Plaintiff is thereby entitled to general and compensatory damages against Defendant in amounts to be proven at trial.

## COUNT V
### DEFAMATION

148.    Plaintiff reasserts and realleges each and every paragraph in this Verified Complaint as if fully restated herein.

149.    Defendant intentionally defamed Plaintiff by communicating libelous and/or slanderous statements about her to third parties, including parties who had or

HALL & CHELLE, LLC
7077 E. Marilyn Rd., Suite 140, Scottsdale, AZ 85254
Tel: 480.422.4529 – Docketing@Hall-Chelle.com

have no reason to know these false, defamatory statements. These acts constitute an invasion of Plaintiff's privacy which is illegal and improper and constitute a tort.

150.   Defendant knew, or should have known, that defaming Plaintiff is improper and constitutes a tort.

151.   As a direct and/or proximate cause of such defamation, Defendant is liable to Plaintiff for all the damages she sustained from those acts.

152.   Plaintiff is entitled tactual damages and compensatory damages for her pain and suffering.

153.   Plaintiff is entitled to substantial punitive damages for those acts of defamation.

## CONCLUSION AND PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this honorable Court:

A.   Issue an order awarding Plaintiff all direct and consequential damages, including but not limited to back pay, fringe benefits, and any other appropriate relief necessary to make Plaintiff whole and compensate her for the violations of the ACRA, Title VII and the EPA, all as the harm more particularly described *supra*;

B.   Award damages including general and special damages for Defendant's tortious conduct as alleged herein and proved at trial;

C.   Award Plaintiff the costs of this action, including reasonable attorney's fees and costs;

D.   Award Plaintiff reasonable pre-judgment and post-judgment interest in the maximum amount allowed by law; and

HALL & CHELLE, LLC

7077 E. Marilyn Rd., Suite 140, Scottsdale, AZ 85254
Tel: 480.422.4529 – Docketing@Hall-Chelle.com

E.   Grant or award Plaintiff with such other legal and equitable relief as this

Court deems just and proper.

RESPECTFULLY SUBMITTED on November 22, 2011.

**HALL & CHELLE, LLC**

By: /s/ Cameron Hall
    7077 E. Marilyn Rd. # 140
    Scottsdale, AZ 85254
    Attorneys for Plaintiff
    Lydia Evanson

HALL & CHELLE, LLC

7077 E. Marilyn Rd., Suite 140, Scottsdale, AZ 85254
Tel: 480.422.4529 – Docketing@Hall-Chelle.com

## **VERIFICATION**

I, _Lyda Evanson_ , the _Plaintiff_ in the above captioned action, hereby declare under penalty of perjury that I have read the foregoing _Complaint._ and the matters asserted therein are true to the best of my knowledge, except those stated upon information and belief, and as to such matters, I believe them to be true.

DATED this _21_ date of _November_ 2011.

# E X H I B I T

# 1

**THE LAW FIRM OF CAMERON HALL & ASSOCIATES, LLC**

# EXHIBIT 1

Southwest Region/Las Vegas Region---January 2009

- Key accomplishments/activities
  - Tempe received word city is sending out a second BAFO
  - Follow Meeting to plan regionalizing G4G Training in Phx
  - Cell phone policy roll out/education training continues
  - Restructure Mgt Team at Englewood/Denver location released S&T Mgr, Customer Service Mgr, hired HR Mgr
  - ZIP service shut down
  - Denver 20 bid submitted/RFD retained incumbent
  - Colorado Springs start up completed; training, onboarding, etc
  - Initial redeployment of G4G in Las Vegas
  - Training Plan for 2009 submitted

- Initiatives/programs under development
  - Restructure in Denver
  - Colorado Springs
  - Recruiting for Regional Safety & Training Dir
  - Phoenix experiment assessments to present to trainers, waiting for assessments from Bill
  - Continue long term plan to regionalize function in PHX area; retaining Tempe bid is critical to plan (payroll, AP etc.)
  - Safety policy and procedure policy union Vegas
  - Vegas running 4 yr background checks per policy; couple of issues referred to John Hoeft

- Operational observations
  - Need to push for changes to key personnel and structural changes Ops, S&T in Vegas
  - Inconsistency in administration of policy between males and females
  - Recommend strategizing approach we use to roll out policy changes and approach. Recently we have had confusion and concern in the field that detract from objective

- Issues/concerns Financial results

  1. Vegas Operations, Safety and Training
  2. Denver Safety and Training Manager

- Other (any additional comments)